# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS STATEWIDE BENEFIT FUNDS AND THE TRUSTEES THEREOF, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 12-cv-7233 (DMC) (MF) |
| NEWARK BOARD OF EDUCATION, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Motion by the State-Operated School District of the City of Newark ("Respondent") to vacate an arbitration Award and Order entered in favor of New Jersey Building Laborers' Statewide Benefit Funds ("Funds") and its Trustees ("Trustees") (collectively, "Petitioners") (Nov. 21, 2012 ECF No. 3 and Dec. 26, 2012, ECF No. 9). The Award and Order were entered by Arbitrator J. J. Pierson ("Arbitrator") on September 27, 2012, finding that Respondent failed to make required employee benefit contributions to the Funds in violation of a collective bargaining agreement ("CBA"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the parties' submissions, and based upon the following, the Court finds that Respondent's motion to vacate the arbitration award is **denied**.

## I. BACKGROUND

Petitioners contend that Respondent failed to make required employee benefit contributions to the Funds in violation of the CBA and the Declaration of Trust of the Funds ("Trust Agreement"). (Petition to Confirm Arbitration Award ("Petition"), ECF No. 1, Nov. 21, 2012 at ¶¶ 6-8). On September 7, 2012, counsel for Petitioners notified Respondent of its alleged deficiency and indicated that the claim would be submitted to arbitration on September 25, 2012 in the event of Respondent's continued delinquency. (ECF No. 10-2, Ex. A, Jan. 4, 2012). On that date, the Arbitrator entered an award in Petitioners' favor for $11,533.93 notwithstanding Respondent's absence from the hearing because he found that Respondent was given proper notice of the arbitration proceeding and was obligated under the CBA to contribute to the Funds. (Petition, Ex. D, Arbitration Award and Order at ¶¶ 1-7).

On November 21, 2012, Petitioners petitioned this Court to confirm the arbitration award, and this Court signed an Order confirming it on December 17, 2012. (ECF No. 5). However, on December 26, 2012, pursuant to local rule 7.1(d)(5), Respondent filed a motion to vacate Petitioners' award. (Cross-Motion to Vacate Arbitration Award ("Motion to Vacate"), ECF No. 9, Dec. 26, 2012). On January 4, 2013, Petitioners filed their opposition to Respondent's Motion to Vacate the award. (Opp'n to Resp.'s Motion to Vacate ("Opp'n"), ECF No. 10, Jan. 4, 2013).

## II. STANDARD OF REVIEW

The Court's standard of review of a labor arbitration award is narrow. Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279-80 (3d Cir. 2002). Under the Federal Arbitration Act, a court may vacate an arbitration award if the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). A court's role in

reviewing an arbitration award is not to correct factual or legal errors made by an arbitrator. Major League Umpires Ass'n, 357 F.3d at 279. The court is limited to assessing "whether the award draw[s] its essence from the collective bargaining agreement[,]" and may only vacate an arbitrator's award if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement. Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996). Subject only to a standard of minimal rationality, an arbitrator's decision requires neither wisdom nor internal consistency. Id. The Court must determine whether the arbitrator manifestly disregarded the terms of the agreement in making the arbitration award.

### III. **DISCUSSION**

Respondent moves to vacate the arbitration award, arguing that (A) Petitioners failed to provide it with adequate notice of the claim and the date of the arbitration proceeding; (B) the Arbitrator exceeded his power by rendering an award in the absence of an agreement to arbitrate; and (C) the Court lacked the authority to confirm the arbitration award.

#### A. Petitioners did not Fail to Provide Respondent with Proper Notice of the Claim and Arbitration Hearing

Respondent argues that Petitioners failed to provide it with proper notice of the claim and the date of the arbitration hearing. Specifically, Respondent contends that Petitioners failed to provide it with proper notice because the September 7, 2012 notice letter from Petitioners' counsel was addressed to Respondent's central office, rather than its Legal and/or Facilities Departments. (Motion to Vacate 1-2, 6-7). According to Respondent, the Legal and Facilities Departments are responsible for handling claims like those in Petitioner's notice letter. (Id. at 1). As a result, Respondent argues that it was denied an opportunity to be heard by the Arbitrator because its responsible employees never received a copy of Petitioners' notice letter setting forth

3

the claim and the specific date of the arbitration proceeding. (Id. at 2, 7). The Court, however, cannot agree.

Respondent relies on a 1984 case from the Western District of Pennsylvania, Amalgamated Cotton Garment & Allied Indus. Fund v. J.B.C. Co. of Madera, Inc., 608 F. Supp. 158 (W.D. Pa. 1984), in support of its contention that it did not receive proper notice. In that case, the employees of a union trust fund brought an action against their employer to enforce several arbitration awards issued in their favor for the employer's failure to make required contributions to the fund under a collective bargaining agreement. Id. at 161-62. The Court, however, declined to enforce the arbitration awards because the employer did not receive proper notice of the arbitration hearings. Id. at 165. Specifically, the Court based this part of its holding on the fact that "for each arbitration proceeding, a notice of intention to arbitrate was sent by certified mail to [the employer]" but "was marked 'unclaimed' and returned to the Fund." Id. at 161 n.3, 165.

The facts of Amalgamated, however, are distinguishable from the present case. Here, Petitioners notified Respondent of their intention to arbitrate the current dispute and the date of the arbitration hearing in a letter from Petitioners' counsel on September 7, 2012. (ECF No. 10-2, Ex. A, Jan. 4, 2012). The letter was sent via both regular and certified mail and the certified mail receipt was signed by an agent in Respondent's office on September 10, 2012. (Id.) Moreover, the letter was properly addressed to Respondent's principal place of business at 2 Cedar Street Newark, New Jersey 07102. (Id.) The Court is not persuaded by Respondent's argument that notice was improper because Petitioners' letter was mailed to the wrong department. The Court believes that Respondent had sufficient time and adequate internal procedures to forward the notice letter to its proper representatives.

Thus, where Petitioners notified Respondent of their intention to arbitrate and the date of the arbitration hearing via regular and certified mail addressed to Respondent's principal place of business, and where Respondent's agent signed for the letter, Respondent may not argue that it lacked proper notice to vacate the arbitration award.

### B. The Arbitrator did not Exceed the Scope of his Power

Respondent next contends that the Arbitrator exceeded the scope of his power by rendering an award in Petitioners' favor in the absence of an agreement to arbitrate. Respondent bases its argument on the alleged fact that the Trust Agreement is the only document that actually references arbitration, and that the language in that document does not contain necessary "words of 'obligation' found in every arbitration clause." (Motion to Vacate 9). Thus, Respondent argues that the Court should deny the arbitration award because it was not a party to an agreement that contained an arbitration provision. (Id.) The Court disagrees.

The CBA, in relevant part, provides:

> The Trustees or Administrators of any fund due contributions pursuant to this Agreement shall be entitled all rights accorded by law including but not limited to the right to demand, receive, sue for, and take such steps, including the institution and prosecution of or the intervention in any proceeding at law or in equity or in bankruptcy that may be necessary or desirable in their discretion to effectuate the payment and collection of any sum or sums and costs required to be paid to the Welfare, Pension or Annuity Funds under this Agreement.

(Petition, Exhibit A, Article 15.20.) Similarly, the Trust Agreement, in relevant part provides:

> The Trustees may take any action necessary or appropriate to enforce payment of the contributions, interest, damages, and expenses provided for herein, including, but not limited to, proceedings at law or equity. The Fund and the Trustees shall not be required to exhaust any grievance or arbitration procedure provided by a Collective Bargaining Agreement or otherwise with respect to the enforcement of such Employer obligations, but rather shall have immediate access to the courts, as provided under applicable law, or to designate a permanent arbitrator to hear and determine collection disputes.

5

(Petition, Exhibit C, Article 4.) Although neither the CBA nor the Trust Agreement expressly contains an arbitration provision, the Court believes that these agreements contemplated arbitration as an appropriate remedy for resolving disputes over delinquent contributions. Notably, Article 15.20 of the CBA provides that the "Trustees or Administrators ... shall be entitled all rights accorded by law *including but not limited to*" a non-exhaustive list of legal remedies for the collection of delinquencies that can be reasonably assumed to include arbitration. (emphasis added). Further, the language of Article 15.30 supports this conclusion. Article 15.30 provides that "in the event the Employer is delinquent in the payment of contributions to the Funds ... the delinquent Employer shall also be required to pay attorneys' fees and court and *arbitration* costs ... whenever the services of an attorney or *arbitrator* are necessary to recover the amount due." (emphasis added). Similarly, Article V, Section 4 of the Trust Agreement provides that the "Trustees may take any action necessary or appropriate to enforce payment[s]" and that the "Funds and Trustees" shall have the ability "to designate a permanent arbitrator to hear and determine collection disputes."

The Arbitrator, in entering the Award and Order in favor of Petitioners, found that that Respondent was bound by the terms of the CBA as a signatory to the Short Form Agreement ("SFA") with the labor union. (Petition, Ex. D, Arbitration Award and Order at ¶ 1). The Court agrees. Respondent signed the SFA incorporating the CBA on May 1, 1999 (Petition, Ex. B) and has continued to make payments to the Funds in satisfaction of ongoing employee benefit contribution obligations (Opp'n 5, Ex. B). Respondent, however, argues that the SFA expired on April 30, 2002, but this argument must fail because Respondent has since continued to make ongoing contributions to the Funds indicating a valid agreement and has not notified Petitioners of any intention to terminate its obligations under the CBA. (Petition, Ex. A, Article 15.40(b)).

Therefore, the Arbitrator did not exceed the scope of his power because Respondent was bound by the terms of the CBA and the Trust Agreement which clearly contemplated the notion of arbitration to resolve delinquent contribution disputes.

### C. The Court had the Authority to Confirm the Arbitration Award

Respondent argues that even if it was obligated to arbitrate Petitioners' claim, this Court lacked the authority to confirm Petitioners' award because it never consented to have a judgment of the Court entered upon the award. (Motion to Vacate 3). In particular, Respondent claims that Petitioners have failed to point to any provision that constitutes an agreement that the Court could enter judgment against Respondent as a result of the arbitration award. (Id.) By contrast, Petitioners contend that their motion to confirm the award is proper because the Funds' rights against Respondent for failing to make required employee benefit contributions are not limited to arbitration. (Opposition at 4). The Court agrees with Petitioners.

Neither the language of the CBA nor the Trust Agreement suggests that Petitioners' legal remedies for collection of delinquent payments from Respondent are limited to arbitration. Rather, Article 15.20 of the CBA provides that the Funds and Trustees "shall be entitled all rights accorded by law ... that may be necessary or desirable in their discretion to effectuate payment and collection of any sum or sums and costs required to be paid ... under this Agreement." Article V, Section 4 of the Trust Agreement further provides that the Funds and Trustees "shall not be required to exhaust any grievance or arbitration procedure provided by a Collective Bargaining Agreement or otherwise with respect to the enforcement of such Employer obligations, but rather shall have immediate access to the courts, as provided under applicable law ...." Taken together, these provisions suggest that Petitioners properly submitted their claim to arbitration and that the Court properly confirmed the award.

7

## IV. CONCLUSION

For the reasons stated, Respondent's motion to vacate the arbitration award is **denied**. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date: June 27, 2013
Original: Clerk's Office
cc: Hon. Mark Falk, U.S.M.J.
All Counsel of Record
File